Danny E. PATCH, Appellant,

v.

Colleen E. PATCH, Appellee.

No. S–2470.

Supreme Court of Alaska.

Aug. 26, 1988.

Barbara Franklin, and Douglas J. Marston, Aglietti, Pennington, Rodey & Offret, Fairbanks, for appellant.

Ardith Lynch, Asst. Atty. Gen., Fairbanks, and Grace Berg Schaible, Atty. Gen., Juneau, for appellee.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

COMPTON, Justice.

This appeal arises from the denial of a non-custodial parent's motion to reduce his child support obligation. The primary issue on appeal is whether the trial court may consider the availability of a movant's assets when asked to modify a child support obligation based on changed circumstances. A second issue is whether the trial court erred in awarding attorney's fees to the Child Support Enforcement Division under Civil Rule 82.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Danny and Colleen Patch were divorced in January 1985. At trial the sole issue was the amount of child support Danny

was to pay.[1] Evidence was introduced that Colleen's monthly gross income was $2,573 and her net income was $1,840. Danny testified that he earned roughly $4,900 per month, including overtime. His mandatory deductions were $1,587 per month. Based on "the economic circumstances of the parties and ... the economic welfare of the children," the divorce decree provided Danny would pay $275 per child per month ($825 total) in child support to Colleen during the periods that Colleen had physical custody of the children. Danny was to have custody of the three children during the summer while Colleen was to have custody during the school year.

In October 1986 Danny was convicted of driving while intoxicated. As a result, Danny's driving privileges were suspended for one year and ninety days (from October 1986 to January 1988). Because of the license suspension Danny could no longer perform his data technician job with Alascom. Danny was informed that if he voluntarily quit his job prior to losing his license, the reason for his leaving would be off the record and he would be eligible for rehire with Alascom in the future. In October 1986 Danny voluntarily resigned from his Alascom job. He was unable to obtain other employment with Alascom that did not require a driver's license.

Approximately two months after the conviction Danny moved to California. He received unemployment benefits until June 1987. He also worked part time at a convalescent hospital from February to June 1987 at $4.21 per hour. By July 1987 he had found a full time job working in a manufacturing company at $4 an hour.

In February 1987 Danny, a vested member of the Teamster's pension fund, had "put in the paperwork" to cash out his pension. The pension was worth $58,000 at that time. Danny asked for a lump sum pay out. He anticipated being able to actually receive the cash in March of 1988.

In June 1987 Danny moved to reduce the amount of child support payable to Colleen. He argued that there had been a substantial change in circumstances in that his earnings had been reduced from $26 per hour to $4.21 per hour. In his accompanying financial affidavit Danny stated that his gross income was $736 per month and that he had no assets. Colleen, represented by the State Child Support Enforcement Division (CSED), opposed Danny's motion. She argued that 1) the equities do not justify placing an even greater burden for support upon her, 2) the change in Danny's circumstances are temporary and 3) he has assets available from the Teamster's pension fund from which child support can be paid. Colleen cross-moved to attach the pension fund to satisfy existing arrearages and for security for future payments.

The trial court ordered Danny to pay 65%[2] of his pension fund to the CSED to pay accrued arrearages and interest and as security for Danny's future child support payments. Arrearages and interest through August totaled over $7,000.

The hearing on Danny's motion to reduce child support was held in October 1987. Colleen testified that basic expenses for the three children were approximately $1,800 per month and that her total expenses were $2,938 per month. Colleen's net monthly income was $2,100, so that without child support she fell about $800 short each month. She further testified that she could not make ends meet on the amount of support she actually received during the previous year which averaged $200 per month. A manager of communications at Alascom testified that Danny had no real job prospects with Alascom during the year and three months his license was suspended. The manager also testified, however, that Danny would have a preference for rehire, that Alascom would be hiring and that Danny would be one of many considered because he was a good employee.

---

**1.** There are three children: Phillip Edward, born February 18, 1978; Erika Ann, born March 26, 1980; and Kara Rochelle, born April 11, 1981.

**2.** The court apparently decided to attach 65% of the pension fund because the CSED argued only 65% can be attached under existing law.

The court orally denied the motion to reduce the child support. The court found:

[A]t the present time, due to Mr. Patch's problem with his driver's license, he may not be able to earn the amount of money he was earning at the time of the original divorce, and there may be changed circumstances to that extent. However, due to the fact that here are sufficient funds available from his retirement benefits to pay the child support arrearages, as well as security for ongoing child support for, approximately, three years, the Court [does] not find there are sufficient changed circumstances to warrant a reduction if this is an asset which can be available to provide the child support. And therefore, the request to modify the child support is denied. With that period of time, there should be sufficient time for Mr. Patch to obtain sufficient employment to meet his child support obligations.

## II. DISCUSSION

■ Trial courts have broad discretion in deciding whether to modify child support orders or award attorney's fees. This court will not find an abuse of discretion unless it has "a definite and firm conviction" based on the whole record that a mistake has been made. *Houger v. Houger*, 449 P.2d 766, 771 (Alaska 1969).

### A. THE SUPERIOR COURT DID NOT ERR IN DENYING DANNY'S MOTION TO REDUCE HIS CHILD SUPPORT OBLIGATION.·

■ For the trial court to modify a support order, the movant must show by a preponderance of the evidence that, subsequent to the original order, there has been a material and substantial change in circumstances affecting the movant's ability to pay. *Curley v. Curley*, 588 P.2d 289, 291, 292 n. 9 (Alaska 1979). "The change ordinarily must be more or less permanent rather than temporary." *Id.* at 291. In determining whether a child support obligation should be decreased the court must consider not only the needs and financial abilities of both parents but also the needs

of the children. *Id.* at 292. "[T]he trial court must examine the financial situation of both parents and determine whether the equities justify placing a greater burden on one and a correspondingly lesser burden on the other." *Id.*

Danny argues that the loss of his Alascom job together with an 80% decrease in income constitutes a material change in circumstances. Danny argues that the sole inquiry for reduction of child support is his income level. Colleen responds that Danny's reduced employment level is only temporary because his driving privileges were restored in January 1988. Colleen also argues that in examining the parties' financial situation the court can look to the assets available for support.

■ The amount of support a parent must provide is related, but not limited, to that parent's present income. We said in *Pattee v. Pattee*, 744 P.2d 658, 662 (Alaska 1987):

On the one hand we do not believe that an obligor-parent should be "locked in" to a particular job or field during the minority of his or her children.... On the other hand, the children of the marriage and the custodial parent should not be forced to finance the noncustodial parent's career change. We believe the better rule is that stated by the Montana Supreme Court: "[T]he judge [is] to consider the nature of the changes and the reasons for the changes, and then to determine whether, under all the circumstances a modification is warranted." *In re Marriage of Rome*, 621 P.2d 1090, 1092 (Mont.1981).

In contrast to Mr. Pattee's decision to become a student, we realize Danny's resignation was not "voluntary" because he was in a "quit or be fired" position as the result of his driver's license suspension. Nevertheless, even where a non-custodial parent does not voluntarily resign from a job the trial court must consider all the circumstances of the change in employment to determine whether a modification is warranted.

■ Courts in other jurisdictions have been unwilling to reduce child support obli-

gations where the non-custodial parent suffers a temporary reduction in income. For example in *Ebert v. Ebert*, 469 So.2d 615 (Ala.App.1985), the non-custodial father closed his medical practice in Alabama and moved to Nevada in hopes of starting a more lucrative practice. Although the father had no income at the time of trial and anticipated none for more than a year the court denied his request for reduction of child support. Similarly, in *Loucks v. Loucks*, 130 Ill.App.2d 961, 266 N.E.2d 924, 926 (1976), the Illinois Court of Appeals reversed an order reducing child support where the non-custodial father indicated that the depressed condition of his business was temporary. We agree with these courts that a trial court should be reluctant to modify child support obligations when the obligor's loss of income appears only temporary.

Another circumstance considered by the trial court was the availability of Danny's pension fund. We have indicated in other contexts that a child support obligation may be satisfied from the non-custodial parent's assets if that parent has insufficient income. *Clemans v. Collins*, 679 P.2d 1041, 1042 (Alaska 1984) (incarcerated parent liable for child support if it is shown he or she has income or assets to make such payments); *Houger v. Houger*, 449 P.2d 766, 771–72 (Alaska 1969) (where non-custodial parent disabled and unable to work at previous occupation we did not express disatisfaction with the idea that a parent may have to sell assets to pay his or her child support obligation). We conclude that when a court is asked to reduce a child support obligation where the parent seeking the reduction is temporarily employed at an income level that does not accurately reflect past and future income levels, the court may properly consider the availability of liquid assets to satisfy an ongoing child support obligation.

In the instant case the trial court found that Danny's reduced income level was a temporary condition due to his suspended driver's license. The record reveals that the children's needs have not decreased since the divorce. Neither party

contests the reasonableness or adequacy of the initial support order of $275 per month per child. In examining the overall financial condition of the parents the record indicates that Colleen's income is insufficient to meet the children's modest needs. Moreover, the record demonstrates that Colleen already bears more than half the actual cost of supporting the children. Therefore, the trial court did not abuse its discretion in considering the cash distribution of Danny's pension fund when determining Danny's financial ability to meet his obligation. We hold that the trial court did not abuse its discretion in denying Danny's motion to reduce child support.

### B. THE SUPERIOR COURT DID NOT ERR IN ORDERING DANNY TO PAY ATTORNEY'S FEES PURSUANT TO CIVIL RULE 82 TO THE CHILD SUPPORT ENFORCEMENT DIVISION.

Shortly after the modification hearing the CSED moved for $3,000 in attorney's fees pursuant to Civil Rule 82. After briefing, the court ordered Danny to pay $1,500 in attorney's fees pursuant to Civil Rule 82. Danny appeals this order.

Danny argues that, because this case involves a divorce, the cost and fee award should be based on the "relative economic situation and earning power" of the parties, citing *Burrell v. Burrell*, 537 P.2d 1, 7 (Alaska 1975). Colleen contends that because the proceeding was a modification of a support obligation fees are awarded under Civil Rule 82. We review attorney's fees awards under the abuse of discretion standard. *Steenmeyer Corp. v. Mortenson–Neal*, 731 P.2d 1221, 1226–27 (Alaska 1987).

In *O'Link v. O'Link*, 632 P.2d 225, 231 n. 15 (Alaska 1981), we found that when a party seeks modification of "an arrearages judgment and of the property division in the divorce decree, the award of costs and attorney's fees is appropriately made under Civil Rule 82." Recently, in *L.L.M. v. P.M.*, 754 P.2d 262 (Alaska 1988), we distinguished *O'Link*, a case involving money and property issues, from cases in-

volving visitation and custody. In *L.L.M.* we established a new rule for attorney's fees in visitation and custody cases. However, we expressed no opinion regarding the Civil Rule 82 prevailing party standard for post-judgment modifications of divorce decrees involving money and property. In *Bailey v. Haas*, 655 P.2d 764, 766 (Alaska 1982), we held that attorney's fees are to be determined pursuant to Civil Rule 82(a)(2) in child support proceedings brought under the Uniform Reciprocal Enforcement of Support Act. In light of our prior decisions, we hold that in modification of child support proceedings attorney's fees are properly determined under Civil Rule 82. The award of $1,500 in fees under Civil Rule 82 was not an abuse of discretion.

 Danny also argues that attorney's fees should not be awarded to the CSED. He argues that if the Attorney General was representing the state, then the state should have been a named party pursuant to Civil Rule 17 or joined as a party pursuant to Civil Rules 19 and 20.

Alaska Statute 47.23.045 provides authority for the CSED to appear "in an action seeking modification of a support order, decree or judgment already entered." In addition, AS 47.23.020(a)(1) requires the CSED to obtain, enforce and administer child support orders. Colleen applied for the services of the CSED and authorized and consented to the appearance by the Attorney General in court proceedings. As the statutory representative of Colleen, the CSED is entitled to the attorney's fees. *See Fairbanks Correctional Center Inmates v. Williamson*, 600 P.2d 743, 746–47 (Alaska 1979).

The decision of the trial court is AFFIRMED.