Timothy J. **PUGIL**, Appellant,

v.

Lisa Sue **COGAR**, Appellee.

No. S–3571.

Supreme Court of Alaska.

May 31, 1991.

---

Linda M. Cerro, Rice, Volland & Gleason, Anchorage, for appellant.

Matthew D. Jamin, Jamin, Ebell, Bogler & Gentry, Kodiak, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

RABINOWITZ, Chief Justice.

The central issue presented by this appeal concerns the superior court's determination of child support under Civil Rule 90.3.[1]

## I. FACTS

On March 2, 1988, Adria Dawn Cogar was born in Kodiak. Her parents were Lisa Cogar and Timothy Pugil. They never married, and at the time of Adria's birth,

---

**1.** The parties do not dispute that the applicable formula for calculation of support in this case is found in Civil Rule 90.3. Civil Rule 90.3, in relevant part, provides,

    (a) **Guidelines—Sole or Primary Physical Custody.** A child support award in a case in which one parent is awarded sole or primary physical custody as defined by paragraph (f) will be calculated as an amount equal to the adjusted annual income of the non-custodial parent multiplied by a percentage specified in subparagraph (a)(2).

    (1) Adjusted annual income as used in this rule means the parent's total income from all sources minus:

      (A) mandatory deductions such as federal income tax, social security tax, mandatory retirement deductions and mandatory union dues;

      (B) child support and alimony payments arising from prior relationships which are required by other court or administrative proceedings and actually paid; and

      (C) work related child care expenses for the children who are the subject of the child support order.

    (2) The percentage by which the non-custodial parent's adjusted income must be multiplied in order to calculate the child support award is:

      (A) 20% (.20) for one child....

The Commentary to Civil Rule 90.3 provides in pertinent part,

    **III. DEFINING INCOME**

    ....

    C. **Potential Income.** The court may calculate child support based on a determination of the potential income of a parent who voluntarily is unemployed or underemployed. A determination of potential income may not be made for a parent who is physically or mentally incapacitated, or who is caring for a child under two years of age to whom the parents owe a joint legal responsibility. Potential income will be based upon the parent's work history, qualifications and job opportunities. The court also may impute potential income for non-income or low income producing assets.

Civil Rule 90.3, Commentary § III.C.

they no longer maintained a relationship. On March 10, 1988, Cogar sued Pugil for child support. Pugil did not contest his child support obligation. The suit proceeded to trial on the amount of child support.

At the time of trial, in November 1988, Cogar was thirty-three years old and worked part time as a registered nurse in a Kodiak hospital. Her take-home pay was between $800 and $850 every two weeks. In addition to Adria, Cogar cared for her child from a former marriage, for whom she received child support from the child's father.

Before her pregnancy with Adria, Cogar had worked more hours than at the time of trial. In this regard, Cogar presented testimony that she suffered from rheumatoid arthritis which prevented her from working full-time. At trial, Cogar's doctor testified that he had recommended that Cogar consider a career less demanding than hospital nursing.

At the time of trial, Pugil was thirty-one years old. He had earned his living for the previous ten years by fishing and welding, mostly in Kodiak and other Alaska fishing ports, although he had spent some time working in Oregon's fishing industry. Pugil earned $29,377 in 1985, $44,446 in 1986, $53,845 in 1987, and $32,821 in 1988. The year 1987 was unusual in that Pugil worked almost every opening and was engaged in fishing for almost nine and a half months. 1988 was also unusual, however, because Pugil did not work several openings, even though his regular crew was actively fishing.[2]

At trial, Pugil testified that he wished to change careers. He stated that he was "burned out" on fishing and wanted a safer, less strenuous career. He testified that he had moved from Alaska back to El Paso, Texas, his original home, and now lived with his current girlfriend, who, at the time of trial, was pregnant. He further described his plans to attend New Mexico State University, to study engineering, and to pursue work as a welder in El Paso, where he expects to earn approximately $4.60 per hour. By attending school part-time year round, Pugil hoped to earn a degree in four years and to begin work as an engineer.

At trial, Pugil requested that the superior court compute his child support obligation based on his prospective earnings as a welder in El Paso. Under the formula of Civil Rule 90.3, this would yield a child support obligation of approximately $125 per month. In its conclusions of law, the court held,

> it is Tim's earning capacity which I should consider in setting his child support obligation rather than what he actually chooses to make. He may, as a result of this order, choose to fish for a portion of each year, or do something else, but I find that considering the relevent [sic] factors under the court's decisions in *Pattee v. Pattee*, 744 P.2d 658, 662 (Alaska 1987), and *Patch v. Patch*, 760 P.2d 526 (Alaska 1988), his unilateral decision to go to school should not affect his child support obligation.

The superior court, noting the difficulty in computing income in the commercial fishing industry, chose to average Pugil's income over the years 1985, 1986, and 1987.[3] Based on Civil Rule 90.3, the court calculated Pugil's child support obligation at $475.36 per month.

After the superior court issued its decision, Pugil moved for reconsideration, arguing in part that the court "has locked Tim into continued employment in the fishing industry—precisely what the Supreme Court in *Patch* and *Pattee* cautioned the trial court against doing." The superior court denied Pugil's motion for reconsideration, treating the motion as a motion to

---

2. Pugil paid no income tax between 1983 and 1987. Nevertheless, before trial, he had an accountant prepare what his income tax and FICA liability should have been for each of those years. At trial, Pugil estimated his accumulated liability to the IRS was $45,000, excluding penalties and interest.

3. After closely examining the record on Pugil's fishing activity for 1988, the superior court chose to ignore that year as an aberration.

amend findings under Civil Rule 59(a).[4] In so ruling, the superior court stated that it

has merely suggested that defendant may want to come to Alaska to commercial fish in the summers to earn the money necessary to help support himself and his child while he attends school. This does not lock him into the commercial fishing industry "during the minority of his ... children" as warned against in *Pattee*, but rather contemplates a more realistic way of meeting his obligations during the expected four year duration of his schooling.

The court entered a final judgment ordering child support of $447.67 per month, allowing an offset for life insurance purchased by Pugil naming Adria as beneficiary, and ordering Pugil to pay $3,500 in attorney's fees to Cogar. Pugil filed this appeal, asserting that the superior court erred by (1) relying on his "past extraordinary earnings" rather than "present wage-earning capacity" to compute child care, (2) failing to fairly apportion the support between the two parties, and (3) awarding attorney's fees to Cogar.

## II. DISCUSSION

A. *Did the Superior Court Err in Basing Pugil's Child Support Obligation Under Civil Rule 90.3 on His Potential Income Rather Than on His Present Earnings?*[5]

■ Pugil argues that the superior court used the wrong income figure to calculate his child support obligation. He cites the commentary to Civil Rule 90.3, which explains that the time period for calculating income is based on the time when "the support is to be paid." Civil Rule 90.3, Commentary § III.E. Thus, "the relevant income figure is expected future income." *Id.* He claims that "expected future income" must be based on his present earnings.

Pugil also argues that the superior court's child support award "locks" him in to commercial fishing, in violation of an express direction from this court to avoid such an outcome. *See Pattee v. Pattee*, 744 P.2d 658, 662 (Alaska 1987). In *Pattee*, however, we held that it was an abuse of discretion for a trial court, without considering all the circumstances, to base its child support order on the existing income of a non-custodial father who voluntarily quit a well-paying job to return to school. Pugil recognizes that his reduction in income is also voluntary, but distinguishes himself from the parent in *Pattee* because he has returned to school in good faith, has explicit career goals, and is working while attending school.

Pugil also acknowledges that we have held that a trial court has the discretion to refuse to reduce a child support order even in the face of an involuntary reduction in the obligor's income. *Patch v. Patch*, 760 P.2d 526, 529–30 (Alaska 1988). In *Patch*, we noted that even with an involuntary reduction in income, the superior court must consider all circumstances. There the temporary nature of the obligor's income reduction, combined with the obligor's assets, justified the superior court's continuance of the existing support order. 760 P.2d at 529–30. However, Pugil distin-

4. In support of this motion, Pugil submitted documents containing new allegations of fact. He stated that he was now employed in El Paso, earning $6.00 per hour as a welder, that he had no resources or assets other than his pay, and that because of lack of funds he registered for only six credits for spring semester, making him ineligible for education loans. In a later affidavit, Pugil reported that his fiancee had given birth, that he now had additional debt from the cost of the birth, that he was completing his two courses at the university and expected to get an *A* and a *B*, and that he planned to take even more classes that summer.

5. The parties agree that both child support and attorney's fees are reviewed for an abuse of discretion. *See Pattee*, 744 P.2d at 662 (child support); *Mann v. Mann*, 778 P.2d 590, 592 (Alaska 1989) (attorney's fees). This court will find an abuse of discretion where it has a definite and firm conviction, based on the record as a whole, that a mistake has been made. *Pattee*, 744 P.2d at 662.

Similarly, denial of a Civil Rule 59 motion to amend the findings of fact and conclusions of law will only be reviewed for an abuse of discretion. *Nelson v. Jones*, 781 P.2d 964, 968 (Alaska 1989), *cert. denied*, —— U.S. ——, 111 S.Ct. 44, 112 L.Ed.2d 20 (1990).

guishes *Patch* by noting that he has no assets and that his income reduction is not temporary.

Cogar responds that the commentary to Civil Rule 90.3 contemplates courts using potential income, based on work history, qualifications, and job opportunities, to measure the income base for child support when the noncustodial parent is voluntarily unemployed or underemployed. *See* Civil Rule 90.3, Commentary § III.C. She notes that Pugil's underemployment is voluntary, as are a host of his decisions, each of which affects his financial situation. Moreover, Cogar argues that Pugil's reduction in income is temporary, and hence the superior court may properly ignore it under *Patch*.

At the time of the child support order, Pugil was voluntarily unemployed. Moreover, Pugil had worked in an industry where employment and income were erratic. Therefore, the superior court properly used an average of Pugil's past income to determine Pugil's child support. *See* Civil Rule 90.3, Commentary § III.E.

Moreover, at the time of the child support order, Pugil's plans were conjectural. He had no job in El Paso. He had not enrolled in school; he was unsure if he would study mechanical engineering or engineering technologies. Significantly, he testified that at the time of trial he had been off work from commercial fishing for only three weeks. Pugil further testified as to what a welder would make in El Paso. He asked the superior court to order child support based on those figures.

▇ Both *Pattee* and *Patch* stand for the proposition that "a trial court must consider all the circumstances of the change in employment to determine [child support]." *Patch*, 760 P.2d at 529; *see also Pattee*, 744 P.2d at 662. *Pattee* notes the tension between locking an obligor into a career and the burden that the obligor's career change places on the custodial parent and the child. 744 P.2d at 662. *Pattee* instructs that in attempting to resolve this

dilemma, the trial court should examine all the relevant circumstances.

Review of the record demonstrates that in the case at bar, the superior court considered the needs of the child, the ability of the custodial parent to meet those needs, Pugil's work history as a commercial fisherman and welder, his qualifications, and job opportunities.[6] The superior court also considered Pugil's plans for education, which it called "laudable." However, after considering all the circumstances of Pugil's proposal and his obligation to his child, the court concluded that his plan "is not completely realistic." As an alternative, the superior court suggested that Pugil could both pursue his education and meet his obligation to support his child by commercial fishing during one quarter of the year. Concerning this issue, the superior court said the following:

4. Most importantly, Tim has made no showing that he cannot continue to work part time as a fisherman while pursuing his otherwise laudable efforts to acquire higher education. Given the responsibilities that Mr. Pugil has to Adria and to what will apparently soon be another child, and the ability he has to continue to make money as a part time commercial fisherman, his plan is not completely realistic. He has the capacity give[n] his substantial experience to fish during either the first quarter of the year during the crab fishery, or during the summer season with halibut or salmon, or even just tendering salmon, to make substantial amounts of money, and that employment should not significantly interfere with his studies....

5. Under applicable precedent, it is Tim's earning capacity which I should consider in setting his child support obligation rather than what he actually chooses to make. He may, as a result of this order, choose to fish for a portion of each year, or do something else, but I find that considering the relevant factors under the court's decisions in *Pattee v. Pattee*, 744 P.2d 658, 662 (Alaska 1987),

---

6. The superior court examined Cogar's income and living expenses, and concluded that she would need a contribution from Pugil of ap-

proximately $510 per month to meet Adria's needs. Pugil does not dispute this calculation.

and *Patch v. Patch,* 760 P.2d 526 (Alaska 1988), his unilateral decision to go to school should not affect his child support obligation. *Pattee* advises that the "trial judge (is) to consider the nature of the changes and the reasons for the changes, and then to determine whether, under all the circumstances" what the amount of support should be. The factors are the same whether it be in the initial computation of support or to determine if a modification is warranted.

6. I find that if Tim continued to work as a commercial fisherman, and was not returning to school, the best data of his prospective earning capacity is an average of the three years from 1985–1987, which yields a monthly obligation in the amount of $475.36.

In light of these findings of fact, and after our study of the record, we conclude that the superior court considered all of the relevant circumstances and thus did not abuse its discretion in determining that Pugil's support obligation under Civil Rule 90.3 should be calculated using his potential income.

B. *Did the Superior Court Abuse its Discretion by Unfairly Apportioning the Burden of Child Support Between the Two Parties?*

Here Pugil raises an equitable argument. He notes that Cogar has equity of $7,500 in her home and that she already has an "advanced educational degree," while he has "no schooling beyond high school," no assets, and a $45,000 debt to the IRS. He considers it unfair that he should have to pay $447 per month child support. Based on his current income, he considers that an "impossible" burden.

Cogar notes that she, who suffers from a debilitating disease, would have to retrain to work in a less demanding job. She believes that any less child support would require her to finance Pugil's education in violation of the edict of *Pattee.* 744 P.2d at 662.

■ This court has previously held that "Rule 90.3 does not abrogate the general rule that a non-custodial parent is obli-gated to contribute only a fair share of the amount required to meet the reasonable needs of the parties' minor children." *Coats v. Finn,* 779 P.2d 775, 776 (Alaska 1989). Therefore, "when a party demonstrates that application of the rule's formula will produce and unfair result, common sense dictates that 'good cause' exists to depart from the formula." *Id.* at 777. Nevertheless, in *Coats* we noted that a party objecting to application of Civil Rule 90.3 must prove good cause by "clear and convincing evidence." *Id.*

Our previously holding, that the superior court did not err in resorting to Pugil's earning capacity as the basis for determining his support obligation under Civil Rule 90.3, is dispositive of Pugil's equitable argument. Here Pugil's reduction in income was voluntary and temporary in nature. Upon consideration of all the evidence, we conclude that the superior court properly determined that the equities did not justify placing a greater burden of support on Cogar, the custodial parent.

C. *Did the Superior Court Abuse its Discretion by Awarding Attorney's Fees to Cogar?*

■ Pugil argues that the superior court erred by awarding attorney's fees to Cogar without correctly assessing the relative economic positions of the parties. Pugil asserts that Cogar "enjoys the more favorable economic condition." Cogar responds that the award of attorney's fees was justified because Pugil has had a larger income for the last several years and because he is in better health.

■ An award of attorney's fees in a "case between unmarried individuals ... limited to issues of child custody and support" is "based on the relative economic situations and earning powers of the parties." *Bergstrom v. Lindback,* 779 P.2d 1235, 1238 (Alaska 1989).

The superior court considered Pugil's average adjusted income for the years 1985–87, $28,521, as a representative sample of Pugil's earning capacity. Cogar's adjusted income, based on the financial declaration

she filed with the court, was $23,131. Cogar provides the only custodial care for the parties' child, and she is physically impaired which limits her earning capacity. In these circumstances, we hold that an award of partial attorney's fees to Cogar was not an abuse of discretion.

## III.  CONCLUSION

The superior court did not abuse its discretion in its calculation of child support or in its grant of attorney's fees.

AFFIRMED.