**Luba YERRINGTON, Appellant,**

v.

**Seth YERRINGTON, Appellee.**

**No. S–7196.**

Supreme Court of Alaska.

March 14, 1997.

J. Mitchell Joyner, Law Office of J. Mitchell Joyner, Anchorage, for Appellant.

Gayle J. Brown, Law Office of Gayle J. Brown, Anchorage, for Appellee.

1. This affidavit showed adjusted annual income of $5,388.78 in 1992, including $2,793.00 received in Native corporation dividends.

2. Luba's child support guidelines affidavit showed an annual adjusted income of $1,530.62. Luba's federal tax return reported adjusted gross

Before COMPTON, C.J., and RABINOWITZ, MATTHEWS, EASTAUGH and FABE, JJ.

## OPINION

EASTAUGH, JUSTICE.

## I. INTRODUCTION

We consider here whether the superior court erred in refusing to modify Luba Yerrington's child support in 1995 after she demonstrated that her 1994 income was less than one-sixth the 1993 income which was the basis for setting her child support obligation under Civil Rule 90.3(a)(1). Alaska R.Civ.P. 90.3(a)(1). We reverse and remand for further findings regarding the appropriate rate of child support.

## II. FACTS AND PROCEEDINGS

Seth and Luba Yerrington were divorced in 1990. The divorce decree awarded custody of the Yerringtons' only child, David, to Luba. In 1993 Seth requested and received custody of David; Luba was granted reasonable rights of visitation. Although Luba submitted a child support guidelines affidavit,[1] the superior court apparently failed to enter an order requiring her to pay child support.

In 1994 Seth filed a motion for child support. Luba filed a new child support guidelines affidavit showing an adjusted annual income of less than $2,000. However, the federal income tax return supporting the affidavit indicated that Luba had received Native corporation dividends totaling $41,300 in 1993.[2] Therefore, the superior court calculated Luba's total income to be $42,995 and established monthly child support payments of $716.58 in accordance with the formula set out in Civil Rule 90.3(a)(1).

In January 1995 Luba moved for a modification of the child support order. She supported her motion with her new child support guidelines affidavit and federal tax forms showing that her 1994 adjusted annual income was $6,708.24. Luba's Native corpora-

income of $1,695. The superior court used the higher figure to calculate Luba's monthly child support obligation. The trial court failed to deduct social security taxes from Luba's gross annual income.

tion dividends accounted for $3,685.40 of this sum. Luba argued that based upon her 1994 income her child support obligation would be $50 per month under Rule 90.3. Because this was a reduction of more than fifteen percent from the current child support order, Luba contended that her income decline constituted a material change of circumstances justifying modification of the support order under Civil Rule 90.3(h)(1).

The superior court denied Luba's motion to modify her child support obligation, stating as its reason that plaintiff's arguments in support of her motion had been "previously considered" by the court. Luba appeals.

### III. *DISCUSSION*

■ Luba argues that under Civil Rule 90.3(h)(1) she was entitled to a modification of her child support based upon the dramatic decrease in her income between 1993 and 1994.[3] A child support award may be modified upon a showing of a material change in circumstances. Alaska R.Civ.P. 90.3(h)(1). "A material change of circumstances will be presumed if support as calculated under this rule is more than 15 percent greater or less than the outstanding support order." *Id.* Luba was required to pay $716.58 per month in child support based upon her 1993 income of $42,995. Child support based on Luba's 1994 income of $6,708.24 would have been more than fifteen percent lower than the amount awarded.

Seth does not dispute this evidence, but argues that the changes in Luba's income are temporary and therefore not a sound basis for modification of the 1994 order. We have held that temporary changes in income are generally not a basis for modification of child support. *Patch v. Patch,* 760 P.2d 526, 530 (Alaska 1988). However, *Patch* involved a change in occupation. *Id.* We held that because the variation in income in such cases is temporary, earlier income remains an accurate estimate of earning capacity. *Id.* This case presents a different situation; the variation in dividends paid by Luba's Native corporation stock is likely to continue into

the future. *Patch* therefore does not apply to this case.

The trial court apparently reasoned that Luba's Native corporation dividends, amounting to $41,300 in 1993, but only $3,685 in 1994, justified the denial of Luba's motion for modification. The trial court evidently assumed that Luba's reduced income in 1994 was an aberration, and that her income from 1993 was characteristic of her earning ability. A review of the record as a whole leads us to conclude that no factual basis existed for such an assumption. To the contrary, Luba demonstrated that her income varies widely, based upon the size of the dividends paid by her Native corporation stock. In 1992 her total income was only $5,388.78, including $2,793 in Native corporation dividends. Although Luba received a dividend of $41,300 from her Native corporation in 1993, she only received $3,580 in Native corporation dividends in 1994, when her total income was $6,708.24.

Absent any evidence that the 1994 dividend was artificially reduced, and that the 1995 dividend would be comparable to the substantial dividend in 1993, Civil Rule 90.3(h)(1) required modification of the existing support order, and the trial court erred by denying Luba's motion.

■ Given that Luba's income tends to fluctuate from year to year based upon the amount of her Native corporation dividends, upon remand the trial court may properly average Luba's income in order to determine an appropriate amount of child support. We have approved an income-averaging approach in calculating child support where an obligor parent demonstrates an erratic or fluctuating income. *Zimin v. Zimin,* 837 P.2d 118, 123 (Alaska 1992) (approving a child support order based on income retrospectively averaged over a three-year period). In addition, the commentary to Civil Rule 90.3 states that in cases where an obligor's income is erratic, the trial court may choose to average the obligor's past income over a number of years. Alaska R.Civ.P. 90.3, Commentary III.E. This possible method reflects an understanding that a single year's income may not be a

---

**3.** We generally review a trial court's decision on a motion to modify child support for an abuse of

discretion. *Karpuleon v. Karpuleon,* 881 P.2d 318, 320 n. 3 (Alaska 1994).

reliable indicator of future earning potential where an obligor's income is highly variable.

In *Zimin*, this court approved a retrospective averaging of the obligor parent's income to calculate child support. *Zimin*, 837 P.2d at 123. Luba's income cannot be retrospectively averaged to include the income she received in 1993 because that income has already been the basis for child support payable under the presumptive schedule of Civil Rule 90.3(a)(2). That year cannot equitably be included in averaging income for subsequent years. The court may, however, take into account income received after 1993[4] to obtain a more accurate picture of the amounts Luba normally receives, and to calculate the appropriate child support to be paid. *See Adrian v. Adrian*, 838 P.2d 808, 811 (Alaska 1992) ("[T]he goal is to arrive at an income figure reflective of economic reality. As a necessary corollary, trial courts must take all evidence necessary to accurately accomplish this task." (citation omitted)).

In addition, it is implicit, assuming no stay was ordered, that Luba has been required to pay substantially too much child support since January 1995, when she filed her unsuccessful motion for modification. "Child support arrearage may not be modified retroactively.... A modification which is effective on or after the date that a motion for modification ... is served on the opposing party is not considered a retroactive modification." Alaska R.Civ.P. 90.3(h)(2). Although the plain language of the rule applies only to arrearages, we have held that, appropriately interpreted, this rule prohibits both retroactive decreases and increases in child support awards prior to the date the modification motion is served on the opposing party. *Boone v. Gipson*, 920 P.2d 746, 749 (Alaska 1996) (asserting that Civil Rule 90.3(h)(2) allows the superior court to in-

crease child support obligations from the date the obligor parent was served with the motion for modification); *see also Epperson v. Epperson*, 835 P.2d 451, 453 (Alaska 1992) (affirming the trial court's award of increased child support beginning on the date the modification motion was served on the obligor parent).

Since Civil Rule 90.3(h)(2) allows for child support decreases from the time the motion for modification is served, to the extent that any arrearages have accrued from the time Luba filed her motion for modification to date, upon remand the trial court should offset the amount of overpayment against the arrearages.[5] *Cf. Arndt v. Arndt*, 777 P.2d 668, 671 (Alaska 1989) (affirming the trial court's decision to allow obligor parent to offset voluntary contributions in excess of support obligation against past due child support).

## IV. CONCLUSION

We REVERSE the decision of the superior court, and REMAND for further proceedings consistent with this opinion.

---

**4.** David was born on March 20, 1978, and reached the age of majority on March 20, 1996. Thus, the trial court may only need to consider Luba's income from 1994 to mid–1996, depending upon when the child support obligation ceased.

**5.** In September 1995 Seth filed a Motion for Entry of Judgment against Luba, alleging that

she owes $9,566.89 for child support arrearages based upon the 1993 child support order. Seth alleges that Luba has not voluntarily paid any child support since that order was entered. Seth further contends that the Child Support Enforcement Division currently garnishes approximately one hundred dollars per month from Luba's wages for child support.