**Jim L. ROBINSON a/k/a Kenneth Harvey Robertson, Appellant,**

v.

**Charlotte A. ROBINSON, Appellee.**

**No. S–7532.**

Supreme Court of Alaska.

Feb. 6, 1998.

---

Jim L. Robinson, Anchorage, pro se.

No appearance for Charlotte A. Robinson.

Before COMPTON, C.J., and MATTHEWS, EASTAUGH, FABE and BRYNER, JJ.

## OPINION

EASTAUGH, Justice.

### I. INTRODUCTION

Jim and Charlotte Robinson's divorce decree and child support order incorporated Jim's agreement to pay child support exceeding the amount Civil Rule 90.3 required. At the time, Jim was unemployed, had no income, had been charged with six felonies, and had filed for bankruptcy. Following conviction and again after incarceration, Jim moved for a reduction of child support, alleging material changes of circumstances under Civil Rule 90.3(h)(1). The superior court denied the motions. We reverse and remand for fact findings regarding the parties' expectations and assumptions when they agreed to deviate from Rule 90.3.

### II. FACTS AND PROCEEDINGS

Jim and Charlotte Robinson married in 1982. They have one child, born in 1987. They separated in 1991.

Shortly before their March 1993 divorce trial was to begin, Jim and Charlotte entered into a "Parenting and Property Agreement" which required Jim to pay child support of $300 monthly beginning in April 1993, and $900 monthly beginning in July "or ... an amount in accordance with Civil Rule 90.3, whichever is greater."[1] In March 1993 the court incorporated these terms into the divorce decree and the child support order. The order specified that child support was not calculated using the Rule 90.3 formula, and stated that "the reason for the variation is: Payor spouse is unemployed but has agreed to amount greater than that provided for under 90.3." The record contains no contemporaneous discussion of the parties' reasons for agreeing to child support exceeding the minimum required by Rule 90.3, or their understanding about the potential effect

---

1. The agreement recited that each party had the advice of independent counsel and had entered into the agreement voluntarily.

of any future changes in Jim's circumstances. The court did not inquire into these topics or make findings on them. It awarded Charlotte sole legal and physical custody of the child.

Jim faced a variety of vicissitudes when he agreed to pay child support of $900 per month. He was unemployed and apparently without other sources of income. He had filed bankruptcy petitions in 1991 for himself and his solely-owned corporation. He had been charged with six felonies relating to a scheme to defraud Exxon Company, U.S.A. He was out of jail on bail and awaiting trial on those charges when he entered into the agreement. His bail was conditioned on twenty-four hour third-party supervision. He later claimed that this condition kept him from working.

In March 1994 Jim pled no contest to one count of scheming to defraud Exxon. The restrictive bail conditions continued pending sentencing. Exxon obtained a nondischargeable federal civil judgment against Jim in December 1994 of more than $500,000. In February 1995 the superior court sentenced Jim to eight years in prison, with four years suspended, fined him $50,000, and ordered him to pay Exxon nearly $200,000 in restitution. Jim began serving his sentence on February 27, 1995.

Beginning in May 1994, Jim filed three motions to reduce his child support obligation, claiming material changes of circumstances; the court denied the first motion in August 1994, but apparently never ruled on the second.[2] In May 1995 after he began serving his sentence, Jim filed his third motion, which relied on his imprisonment. At the request of the superior court, Master Lucinda McBurney conducted an evidentiary hearing in July 1995 regarding Jim's third motion. The master's initial report, issued in October, noted that the allegations in Jim's first two motions did not support a finding of material change of circumstances. Those

motions alleged that he was bankrupt and was unable to work as a result of restrictive release conditions, circumstances that predated the agreement. The initial report, however, also concluded that even if Jim was not imprisoned for the full four years, the period of incarceration was substantial enough to be considered permanent for purposes of a motion to modify child support. The master therefore recommended reducing child support to $50 per month, effective as of the date of incarceration, February 27, 1995.

The master held this initial report in abeyance, however, upon learning that Jim might be released from confinement in December 1995. Jim was released on parole in late December. Shortly before Jim's release, the master issued amended recommendations. They concluded that because Jim "had only [been] incarcerated for eight months,"[3] there had been no material change of circumstances justifying a reduction in child support. The amended recommendations also noted that Jim had "agreed to the amount of child support ordered in the divorce when he was in third party custody and knew he was facing prosecution and possible imprisonment."

While on parole, Jim was "subject to geographical and curfew restrictions" for one year. He obtained employment at $8 an hour. As of early 1996, he owed approximately $30,000 in child support arrearages.

In January 1996 the superior court approved the master's amended recommendations and denied Jim's third modification motion. Jim appeals.

### III. DISCUSSION

#### A. Material Change of Circumstances

■ Jim argues that the superior court erred: (1) by approving the master's amended recommendations and denying Jim's motion; (2) by failing to reduce child support to

---

2. Charlotte opposed each motion, arguing that Jim knew when he signed the agreement that he had no employment and was on restrictive release, that Jim continued to spend money on himself but had not paid even $50 monthly in child support, and that he could have been released on less-restrictive conditions had he been

genuinely interested in employment. She did not file a brief on appeal.

3. Jim had actually served ten months when he was released.

$50 per month while Jim was on bail or incarcerated (between February 1993 and late December 1995); (3) by failing to reduce child support to $256 beginning January 1, 1996; (4) by failing to hold an evidentiary hearing before approving the master's amended recommendations; and (5) by failing to stay collection by the Child Support Enforcement Division (CSED) until we decide this appeal.[4]

The superior court, by approving the master's amended recommendations, apparently concluded that Jim had not experienced a permanent, material change of circumstances. Jim contends that the following were material changes of circumstances: (1) bail condition of twenty-four hour third-party supervision; (2) personal and corporate bankruptcy and Exxon's $500,000 judgment against him; (3) incarceration; and (4) return to employment at a greatly reduced income.[5]

■ A final order awarding child support may be prospectively modified "upon a showing of a material change of circumstances." Alaska R. Civ. P. 90.3(h)(1). This rule "provides an exception to the general principle that final judgments should not be disturbed." *Bunn v. House*, 934 P.2d 753, 757 (Alaska 1997). "A party should not be allowed to relitigate the same facts in the hope of gaining a more favorable result. There must be a material change of circumstances before a support order can be modified." *Id.* Temporary changes in income are generally not a basis for modifying child support. *See*

*Yerrington v. Yerrington,* 933 P.2d 555, 557 (Alaska 1997); *Patch v. Patch,* 760 P.2d 526, 530 (Alaska 1988).

■ When child support is awarded in accordance with Rule 90.3, the main variable is normally the obligor's adjusted annual income, and resolution of a modification motion is relatively straightforward. But when the court awards support based on the parties' agreement for support exceeding that required under Rule 90.3, the agreement complicates resolution of a modification motion. The agreement is essentially a contract. *See Aga v. Aga,* 941 P.2d 1260, 1262 (Alaska 1997); *Dewey v. Dewey,* 886 P.2d 623, 625 (Alaska 1994). An agreement for child support cannot prevent modification, because the parties may not waive the application of Rule 90.3. *Aga,* 941 P.2d at 1262. Nonetheless, a final order incorporating the agreement should not be modified just because one of the parties decides their bargain was improvident. "The principle of finality is a sound one." *Bunn,* 934 P.2d at 757. Otherwise such an order would be subject to immediate modification on the ground that the obligor's actual adjusted annual income is less than the required income if the applicable Rule 90.3 percentage were applied.[6]

In agreeing to entry of an order for support exceeding that required under Rule 90.3, parties may reach a bargained-for result based on their understanding of the circumstances when they enter into their agreement and their anticipation of contin-

---

4. We review orders granting or denying modification of child support orders for abuse of discretion. *Yerrington v. Yerrington,* 933 P.2d 555, 557 n. 3 (Alaska 1997); *Patch v. Patch,* 760 P.2d 526, 529 (Alaska 1988). We will find an abuse of discretion only if "the record as a whole [leaves us] with a 'definite and firm conviction that a mistake has been made.'" *Richmond v. Richmond,* 779 P.2d 1211, 1216 (Alaska 1989) (quoting *Hunt v. Hunt,* 698 P.2d 1168, 1172 (Alaska 1985)). "Findings of fact shall not be set aside unless clearly erroneous." Alaska R. Civ. P. 52(a); *see Bergstrom v. Lindback,* 779 P.2d 1235, 1237 (Alaska 1989).

5. Jim appeals from the January 1996 order denying his motion and approving the master's amended recommendations, but his appeal also argues the grounds raised in his first motion (denied July 1994) and his second motion (which

was never decided). He did not file an appeal from the July 1994 order denying his first motion. Even though the court did not expressly rule on the second motion, that motion asserted the same grounds for relief as the first motion. We must therefore deem it denied as of the date made (under the law of the case doctrine) or deem it an untimely motion for reconsideration. We therefore limit our consideration to the order denying the third motion. This affects the effective date of any relief. As we will see, however, circumstances relating to the first two motions continue to have some bearing on our analysis. No possible error in entering the 1993 order is before us.

6. A court normally would not order support of $900 per month for one child under Rule 90.3(a)(2)(A) unless the obligor's adjusted annual income were $54,000.

gent future events. For example, parties may realize that the obligor's income is presently insufficient to justify the amount awarded, but will likely increase enough to discharge any accumulating arrearage.

■ Consequently, it is necessary in such a case to determine what circumstances caused the parties to agree to enhanced support. Those circumstances are the baseline which must be compared with the circumstances that allegedly justify modification. If, for example, a party agrees to enhanced support despite having no realistic prospects of achieving income sufficient to satisfy the award (and pay arrearages), an assertion that the party has not realized the required income level does not raise a genuine claim of changed circumstances; the motion is actually an attack on the original order and the agreement underlying it.

This case illustrates the difficulties that can result when an order that approves child support exceeding the minimum required by Rule 90.3 does not explain what justified the variation and contains no findings satisfying Rule 90.3(c)(1).[7]

When the parties agreed upon child support and the court entered the support order and the divorce decree, Jim faced multiple felony charges and was free on bail conditions that restricted or prevented employment, was unemployed, and was in bankrupt-cy. The agreement divulges no income source whatever, let alone income warranting monthly child support of $900. It is silent about any circumstances warranting that award.[8] It does not discuss why the parties deviated from the Rule 90.3 guidelines.[9] Nor does it discuss whether possible future events—such as incarceration, imposition of civil liability or criminal restitution, or continuation of restrictive bail conditions—would affect Jim's ability and obligation to pay the child support ordered. Because Jim had already been charged criminally and released on restrictive bail conditions, the parties may have recognized that Jim had no immediate prospects for earning income sufficient to satisfy the support order. They also may have contemplated the possibility that Jim might be incarcerated for many months.[10]

The support order contains no finding of good cause for awarding $900 monthly rather than the $50 minimum seemingly appropriate under Rule 90.3(c)(1)(B). It does not specify the reason for the variation. Rule 90.3(c)(1) permits the court to vary a child support award as calculated under Rule 90.3 for "good cause upon proof by clear and convincing evidence that manifest injustice would result if the award were not varied. The court must specify in writing the reason for the variation, the amount of support which would have required but for the variation...." Alaska R. Civ. P. 90.3(c)(1).

7. Civil Rule 90.3(c)(1) provides in pertinent part: The court may vary the child support award as calculated under the other provisions of this rule for good cause upon proof by clear and convincing evidence that manifest injustice would result if the support award were not varied. The court must specify in writing the reason for the variation, the amount of support which would have been required but for the variation, and the estimated value of any property conveyed instead of support calculated under the other provisions of this rule. Good cause may include a finding:

. . . .

(B) .... that the parent with the child support obligation has a gross income which is below the poverty level as set forth in the Federal Register. However, a parent who would be required to pay child support ... must be ordered to pay a minimum child support amount of no less than $50.00 per month....

8. The master later noted that Charlotte and participants in the bankruptcy case suspected that Jim has undisclosed assets, a suspicion the master characterized as "not unfounded." If that suspicion were valid, it might explain why Jim and Charlotte would agree to support payments of $900 per month without revealing to the superior court (or the bankruptcy creditors) that Jim's assets permitted him to pay the agreed-upon support, even though he was not employed.

9. The record contains no evidence supporting Jim's contention on appeal that he agreed to $900 per month under duress and coercion.

10. An expectation that Jim would soon be able to work might account for the parties' agreement. If that was their understanding, Jim should have sought modification as soon as that contingency failed, and should then have appealed from any denial of relief on that ground. By the time he filed his third motion, Jim was incarcerated; his pre-incarceration release conditions are consequently irrelevant.

■ If there is a large relative and absolute disparity between the minimum amount required under the rule and the amount agreed upon, it is particularly important for the parties to articulate their reasons for the variation, and for the court to follow Rule 90.3(c)(1). Even assuming that an agreement to pay more child support than Rule 90.3 requires is of less public concern than an agreement to pay less child support than the rule requires, *see Flannery v. Flannery*, 950 P.2d 126, 130–131 (Alaska 1997), it is still important for courts to explain their reasons for departing from Rule 90.3 because motions alleging changed circumstances as grounds to increase or reduce child support are not infrequent. If the parties have agreed upon more support than Rule 90.3 requires, the superior court, in assessing the claim of changed circumstances, may have to determine what circumstances and assumptions motivated the parties' original agreement. *Id.* at 131–132. If the contracting parties anticipated contingent future events that, had they been unexpected, would have constituted a material change in circumstances, it can be argued that they bargained for the obligor's undertaking, and that the court should enforce the bargain.

■ To assist the trial court in the first instance and this court on review to decide whether there has been a material change in circumstances, parties agreeing upon support exceeding that required by Rule 90.3 should express their understanding of the relevant material circumstances. Rule 90.3(c)(1) requires an equivalent showing. Likewise, the superior court should determine the basis for the contract, when first approving the agreement or when considering a modification motion that asserts changed circumstances.

■ The master here made no express findings about the parties' expectations when Jim moved to modify the support order, but noted that the circumstances that occasioned Jim's first two motions predated the 1993 divorce decree. Of the three circumstances on which Jim relied in his three motions to modify, the only circumstance that changed after the court entered the support order and the divorce decree in 1993 was Jim's incarceration in 1995. (His bankruptcy and restrictive release conditions were unchanged.) Although the parties may have expected his incarceration, Jim was not convicted until 1994. Based on the record, we cannot say as a matter of law that relief must be denied on the ground that the contingency of incarceration, and the risk it would affect Jim's earning capacity, was part of the parties' 1993 bargain.

Although the master initially concluded that Jim's incarceration was a permanent change of circumstances, her amended recommendations implied that the change was too short to be "permanent." Absent any indication otherwise, the order approving the master's amended recommendations and denying Jim's motion must be taken as having adopted the master's apparent reasons for denial.

■ The superior court erred in applying the "temporary" versus "permanent" change of circumstances analysis—used when the obligor has lost or changed jobs—to the length of Jim's imprisonment for purposes of determining whether support should be reduced. *Cf. Patch*, 760 P.2d at 529–30 (trial court appropriately did not modify child support based on temporary change in obligor's income). When he filed his third motion, in May 1995, Jim had begun serving his sentence of four years. He was not granted parole until October 1995 and was not released until December. At the time he filed his third motion, his incarceration was sufficiently "permanent" to justify modification as long as the change was material.[11]

■ Jim's imprisonment was a significant change in his personal circumstances. It is less obvious whether that change is legally material. In 1993 Jim had no identified income, was unemployed, and was subject to restrictive bail conditions that allegedly kept him from working. His income and earning capacity did not change before he made his third motion; apparently he had none in 1993

---

11. A support order may not be retroactively modified. Alaska R. Civ. P. 90.3(h)(2). Any relief to which Jim is entitled on remand may not predate his May 1995 motion. His prior motions are not before us.

and none in 1995. If incarceration did not affect Jim's earning capacity or income, it was arguably not a material change. We cannot say as a matter of law that Jim's incarceration was material. That question turns on what circumstances the parties contemplated when they entered into their agreement, and on whether incarceration actually reduced Jim's anticipated income or earning capacity.

▋ Jim also argues that his obligation should have been reduced to the $50 per month minimum required by Rule 90.3 during the two years he was subject to constant third-party supervision and during the ten months he was in prison. The period when he was subject to third-party supervision predated Jim's third motion. He cannot obtain retroactive modification of the 1993 child support order. *See supra* note 11. Moreover, that condition predated the support order.

▋ For these reasons, we remand for fact findings regarding the parties' assumptions underlying the 1993 agreement, and for reconsideration of Jim's claim of changed circumstances.[12]

## B. *The Applicability of the "Fifteen Percent Rule"*

▋ Jim also argues that he is entitled to the benefit of the presumption found in Rule 90.3(h)(1), which states in part: "A material change of circumstances will be presumed if support as calculated under this rule is more than 15 percent greater or less than the outstanding support order." On remand, the superior court will again confront this issue.

Jim contends that because of the constraints of his parole conditions, the only job he could find after his release in December 1995 paid $8 per hour.[13] He argues that child support should be $256 per month under the Rule 90.3 schedule. Because this amount is more than fifteen percent less than the amount the present support order requires, he argues that he is entitled to the presumption of a material change of circumstances.

We have recently noted that the "fifteen percent rule" does not apply if an obligor initially agreed to pay an amount in excess of that minimally required under Rule 90.3(a), or if the court ordered an additional award under Rule 90.3(c)(2). *Aga*, 941 P.2d at 1263 n. 6; *see also Flannery*, 950 P.2d at 132. As we explained in *Flannery*:

> If the presumption were available in such a case, an obligor who agreed to pay child support more than 15% greater than the support required by Rule 90.3, could seek a modification immediately after signing the agreement, arguing that the 15% presumption had been triggered. Likewise, the presumption would immediately arise in any case in which a court ordered additional payments under Rule 90.3(c)(2).

*Id.*

Jim's case highlights the troublesome consequences of applying the presumption if the initial award exceeds the requirements of Rule 90.3 and there is no indication how or why the parties agreed to such an award. The agreement is silent about their expectations regarding any source for support of $900 per month. Under these circumstances, *any* job would both *increase* Jim's income from $0, and provide a theoretical basis for

---

12. Jim also argues that the superior court abused its discretion by not holding an evidentiary hearing before approving the master's recommendation. Our remand on the change of circumstances issue moots any objection to the adequacy of the proceedings. We note, however, that a hearing is not required for child support disputes when there is no genuine issue of material fact before the court. *See Turinsky v. Long*, 910 P.2d 590, 594 (Alaska 1996). The superior court could properly rely on the hearing conducted and the facts gathered by the master, as long as her findings decided the issues in dispute.

Jim also argues that the superior court abused its discretion by not staying collection by CSED until this court decided his appeal. Where there is no showing of irreparable harm or of a probability of success on the merits, the superior court does not abuse its discretion in denying a stay. *Keane v. Local Boundary Comm'n*, 893 P.2d 1239, 1250 (Alaska 1995). It also appears that CSED was not a party below. (It is not a party in this court.)

13. We note, however, that the master indicated that the geographical and curfew restrictions on his parole would last for only one year after his release.

*reducing* child support if the presumption applied.

As we stated in *Bunn*, " '[t]he 15% rule' is a rule of *materiality,* not a definition of what constitutes a change of circumstances. There must be a change of circumstances, either factual or legal." 934 P.2d at 758.

The rule can be used to demonstrate materiality, but the court cannot compare the amount the obligor agreed to pay and what the rule minimally requires. Instead, it must compare the amount the obligor agreed to pay and the amount the agreement would require after the change in circumstances in light of the parties' contracting intentions and expectations.

For example, one can imagine a case in which the only change is a reduction in the obligor's adjusted income, and the parties have specified child support equal to the product of the pertinent percentage from Rule 90.3(a)(2) and the obligor's uncapped income.[14] The equivalent calculation (multiplying the obligor's uncapped changed income by the pertinent percentage) yields the support the parties presumptively would have specified had that been the obligor's income when they entered into their agreement.[15] *Flannery,* 950 P.2d at 132. If the support so calculated is more than fifteen percent less than the agreed-upon support, materiality exists for purposes of seeking modification.[16]

The "fifteen percent rule" does not apply in this case in the way Jim claims. It simply provides a useful threshold for distinguishing between material and immaterial changes. This case turns not on the fifteen percent standard, but on the circumstances to be compared in deciding whether a material change has occurred.

## IV. CONCLUSION

We accordingly REVERSE and REMAND for fact findings consistent with this opinion.

**14.** The percentages and guidelines set forth in Rule 90.3(a) and (b) "do not apply to the extent that the parent has an adjusted annual income of over $72,000." Alaska R. Civ. P. 90.3(c)(2). A court may, however, approve a support agreement that includes income above this $72,000 "cap" "only if it is just and proper, taking into account the needs of the children, the standard of living of the children and the extent to which that standard should be reflective of the supporting parent's ability to pay." Alaska R. Civ. P. 90.3(c)(2).

**15.** For example, an obligor with one child and an annual income of $100,000 might agree to a child support award of twenty percent of his or her income ($20,000). If the obligor's annual income subsequently dropped to $80,000, the child support obligation would drop to $16,000. This would constitute a presumptive material change in circumstances under the "fifteen percent rule," because the reduction would exceed fifteen percent of the agreed-upon support. To

give effect to the parties' agreement, the obligor would be entitled to relief but would nonetheless be required to pay support based on his or her total income, including that exceeding the $72,-000 "cap." For purposes of applying the fifteen percent rule, the court would compare twenty percent of $100,000 and twenty percent of $80,-000, not twenty percent of $100,000 and twenty percent of $72,000.

**16.** More complicated situations will require preliminary application of the *Curley* test to determine materiality. *See Curley v. Curley,* 588 P.2d 289, 292 (Alaska 1979). Courts applying this test consider the children's needs, and both parents' financial needs and abilities, in determining whether to reduce one parent's support obligation. *See id.* The materiality test minimizes judicial tinkering with support obligations absent a showing that a substantial change in amount will result if the motion succeeds. The test serves interests of judicial economy and repose.