**Michael J. FLANNERY, Appellant,**

v.

**Stephanie FLANNERY, Appellee.**

No. S–7478.

Supreme Court of Alaska.

Dec. 19, 1997.

Rehearing Denied Jan. 22, 1998.

Carl J.D. Bauman, Hughes, Thorsness, Gantz, Powell & Brundin, LLC, Anchorage, for Appellant.

Allan Beiswenger, Robinson, Beiswenger & Ehrhardt, Soldotna, for Appellee.

Before COMPTON, C.J., and MATTHEWS, EASTAUGH, FABE and BRYNER, JJ.

## *OPINION*

EASTAUGH, Justice.

### I. *INTRODUCTION*

Michael Flannery entered into an agreement in 1992 to pay child support significantly exceeding the minimum amount required by Alaska Civil Rule 90.3; in 1995 he moved to reduce his support payments, claiming a material change of circumstances under Rule 90.3(h)(1). The superior court denied his motion. We conclude that the superior court erred when it relied on a three-year average of Michael's income to determine that he had not experienced a reduction in income. Accordingly, we reverse and remand.

### II. *FACTS AND PROCEEDINGS*

Michael and Stephanie Flannery married in 1978 and divorced in 1992. Their four children were born between 1979 and 1986.

Michael is a general surgeon who has practiced medicine since 1973; he has practiced in Soldotna since 1990. He is the only doctor employed by his professional corporation, and is its sole owner and shareholder. During their marriage, Stephanie worked as a nurse-bookkeeper for Michael's corporation. She now resides in Mississippi where she has worked as a registered nurse since 1992.

In 1991 Stephanie filed a domestic violence petition and a complaint for divorce. After preliminary orders were entered, including one requiring Michael to pay child support of $2,700 per month, the Flannerys entered into a "Property, Custody, Visitation, and Child Support Agreement." Judge Elaine Andrews incorporated their agreement by reference into the June 1992 final divorce decree.

The agreement provides for joint legal custody of the children and gives primary physical custody to Stephanie during the school years and to Michael during the summers. The child support provisions state in relevant part: "The parties agree that [Michael's] adjusted monthly income is $10,273. The parties agree that there are unusual circumstances which justify departure from the formula set forth in Alaska Civil Rule 90.3. The parties agree that [Michael's] child support obligation is $3,600 per month beginning June 1, 1992." The agreement also contains self-executing provisions that reduce Michael's monthly child support by $900 for each child who chooses to live with Michael. The agreement does not address whether and how changes in Michael's income or Stephanie's income might affect child support.

The agreement specified how it was to be modified. Paragraph XXIV states, "No modification or waiver of any of the terms herein shall be valid unless in writing and signed by both parties."

Rule 90.3(a) controlled the calculation of child support payable for the Flannery children because the parents did not share physical custody. Rule 90.3(a)(2) specifies the percentages by which Michael's adjusted income "must be multiplied" to calculate child support: 20% for one child, 27% for two, 33% for three, and 36% for four. Rule 90.3(c) governs "exceptions." Rule 90.3(c)(2) provides that Rule 90.3(a) and (b) (and thus the specified percentages) "do not apply to the extent" the obligor parent's adjusted annual income exceeds $72,000. Prior to July 15, 1995, and at the time the parties entered into the agreement and the court entered the divorce decree, this income "cap" was $60,000. Alaska Supreme Court Order No. 1192 (March 10, 1995). If the obligor's income exceeds the cap, "the court may make an additional award only if it is just and proper, taking into account the needs of the children, the standard of living of the children and the extent to which that standard should be reflective of the supporting parent's ability to pay." Alaska R. Civ. P. 90.3(c)(2).

In approving the agreement and incorporating it by reference into the divorce decree, Judge Andrews found:

> There is good cause to deviate from the child support formula set forth in Alaska Civil Rule 90.3. The child support formula set forth in the Property, Custody, Visita-

tion and Child Support Agreement is just and proper, taking into account the needs of the children, the standard of living of the children, and [Michael]'s ability to pay. The "deviation" the court noted was the result of basing support on all of Michael's income, including that exceeding the cap. Had the parties adhered to the $60,000 cap then in effect, the support for four children would have been $1,800 per month. Alaska R. Civ. P. 90.3(a)(2). Applying the Rule 90.3(a)(2) percentages to $10,273—Michael's monthly adjusted income as specified in the parties' agreement—the monthly support for four children would have been $3,698.28, very similar to the $3,600 support the parties agreed to and the court approved.

In 1993 the oldest child chose to live with Michael, who then reduced his monthly child support payments to $2,700.

In early January 1995 the next oldest child chose to live with Michael. Michael promptly filed a motion to modify the child support agreement. Claiming that his medical practice had declined and that he could no longer pay the agreed-upon child support, Michael asked that the $60,000 cap be applied, although he admitted his income exceeded $60,000. He asked that his obligation for the four children be reduced to $1,800 per month, with a further reduction of $450 for each child living with him. He supported his motion with the affidavit of Annette Flannery, his present wife and the bookkeeper of his corporation. The evidence would have supported a finding that Michael's adjusted income had dropped after January 1995 to about $6,000 or to somewhat "less than" $6,000 per month.

Following a two-day evidentiary hearing, Judge Rene J. Gonzalez denied Michael's motion for modification, finding that the evidence did not support Michael's contention there had been a substantial change of circumstances by a reduction of income to "less than $6,000." The court stated that it was appropriate to review Michael's income by

calculating a three-year average, because he was a private physician whose income might vary from year to year. The court denied Michael's reconsideration motion.

This appeal followed.

## III. DISCUSSION

### A. Standard of Review

■ This court reviews modification of child support orders under an abuse of discretion standard. *Patch v. Patch,* 760 P.2d 526, 529 (Alaska 1988). An abuse of discretion will be found only if "based on the record as a whole this court is left with a 'definite and firm conviction that a mistake has been made.'" *Richmond v. Richmond,* 779 P.2d 1211, 1216 (Alaska 1989) (citation omitted). Under Alaska Civil Rule 52(a) "[f]indings of fact shall not be set aside unless clearly erroneous." *See Bergstrom v. Lindback,* 779 P.2d 1235, 1237 (Alaska 1989).

■ The interpretation of the parties' agreement is a question of law, which we review applying our independent judgment. *Van Alfen v. Van Alfen,* 909 P.2d 1075, 1077 n. 4 (Alaska 1996) (citation omitted).

### B. Modifiability of the Agreement under Rule 90.3(h)(1)

■ The threshold question we must decide is whether a private agreement that bases child support on income exceeding the Rule 90.3(c)(2) cap is modifiable under Rule 90.3(h)(1). Michael argues that "[t]he law of Alaska is clear that child support payments, even if based on an agreement between the parties, are subject to modification."

■ Stephanie contends that Michael's child support obligation under the agreement—a valid and binding contract between the parties—is self-executing and clear on its face, and should be enforced without reference to Rule 90.3.[1] She also argues that the language governing modification of the

---

1. Michael argues that we should not consider this argument because Stephanie did not cross-appeal and did not timely move to supplement the points on appeal. Stephanie was not obligated to cross-appeal for us to consider her argument. *See Fox v. Alascom, Inc.,* 783 P.2d 1154,

1157 (Alaska 1989): "An appellee who does not wish a change in the decree appealed from is not required to cross-appeal in order to preserve his right to urge errors in a district court's ruling that would, if accepted by the appellate court, support an affirmance of the appealed decree."

agreement is binding and that the child support obligation in the agreement "would not be subject to modification by the court based upon any change in circumstances."

■ Certainly superior courts have authority to modify a child support order. Alaska Statute 25.24.170 confers broad authority to do so.[2] *See also* Alaska R. Civ. P. 90.3(h)(1). We have not squarely decided whether and under what circumstances the power to modify upon a showing of a material change of circumstances encompasses orders based on agreements to pay *more* child support than the Rule 90.3 guidelines require. It is clear, however, that an order based on an agreement to pay *less* child support than the guidelines require is modifiable under Rule 90.3. Stephanie and Michael could not have agreed to child support payments lower than those required under the Rule 90.3 guidelines without obtaining judicial approval for the deviation under Rule 90.3(c)(1). *See Cox v. Cox*, 776 P.2d 1045, 1048–49 (Alaska 1989); *see also Taylor v. McGlothlin*, 919 P.2d 1349, 1352 (Alaska 1996) ("The prohibition against parents agreeing privately to a level of a child support *below* that called for by the provisions of Civil Rule 90.3 is an integral component of Civil Rule 90.3.") (emphasis added).

The broad language of these cases suggests that this principle also applies to child support agreements that exceed the Rule 90.3 requirements. In *Cox*, for example, we held that "[p]arents may not make a child support agreement which is not subject to the rule." *Id.* at 1048. In a case decided before Rule 90.3 was adopted, we stated that "[A child support] order may be modified notwithstanding the fact that it was based on a separation agreement or stipulation signed by the parties." *Curley v. Curley*, 588 P.2d 289, 291–92 (Alaska 1979).

Of course an agreement to pay less than the rule requires disadvantages the children; agreeing to pay more than the rule requires does not[3] (assuming the payments are sustainable without threatening the obligor's ability to pay support in the future). A court being asked to approve a deviation from the support guidelines must look critically at an agreement that proposes to pay less than the rule requires. Concern for the children is no impediment to approving an agreement that calls for greater support than the rule specifies.[4] That does not mean, however, that the mere existence of such an agreement, even one containing language purportedly restricting amendment, places modification beyond the power of the superior court. Child support is a matter of public concern, and neither AS 25.24.170 nor Rule 90.3(h)(1) suggests that particular terms of an agreement can totally restrict the court's ability to modi-

---

**2.** AS 25.24.170 states:

*Modification of judgment.* (a) Subject to AS 25.20.110, any time after judgment the court, upon the motion of either party, may set aside, alter, or modify so much of the judgment as may provide for alimony, for the appointment of trustees for the care and custody of the minor children or for their nurture and education, for the care, nurture, and education of unmarried 18–year–old children of the marriage while they are actively pursuing a high school diploma or an equivalent level of technical or vocational training and living as dependents with a parent, guardian, or designee of the parent or guardian, or for the maintenance of either party to the action.

(b) For the purposes of a motion to modify or terminate child support, the adoption or enactment of guidelines or a significant amendment to guidelines for determining support is a material change in circumstances, if the guidelines are relevant to the motion.

**3.** This generalization does not necessarily apply where the obligor has custody of one or more children, as an increase in the obligor's pay-

ments decreases the funds available for the support of children in the custody of the obligor. *See, e.g., Bussert v. Bussert*, 677 N.E.2d 68 (Ind. App.1997) (Father, after obtaining custody of one of three children, agreed to pay previous level of support which exceeded guideline amount; later, the court approved the father's request to reduce child support obligation to zero because guidelines then called for no payment of support by either parent; court explained that enforcement of the parties' agreement would "compromise[] the standard of living of the child in Father's custody" and was thus "contrary to public policy.").

**4.** We need not consider here whether a court should give particular scrutiny to an agreement that, even though it specifies support greater than the minimum the rule requires, nonetheless might call for payments that represent a mere pittance given the obligor parent's extraordinary wealth and income.

fy it so long as a change of circumstances is proven.

■ The rationale underlying judicial modification of child support agreements is consistent with a conclusion that existence of the agreement should not altogether prevent the obligor from invoking Rule 90.3 in order to seek modification of the agreement. Commentary I.B. to Rule 90.3 states that the primary purpose of the rule "is to ensure that child support orders are adequate to meet the needs of children, subject to the ability of the parents to pay." We recently explained that Rule 90.3(h)(1), which "provides an exception to the general principle that final judgments should not be disturbed," recognizes "that courts have a special duty with regard to the support of children whose parents have divorced." *Bunn v. House*, 934 P.2d 753, 757 (Alaska 1997).

■ Further, it is not clear, given the present divided custody status of the children in this case, that the agreement calls for more total support than would be imposed if there were no agreement. There is no fixed formula applicable to divided custody under Civil Rule 90.3 and various methods have been employed. These methods are described in *Bunn*, 934 P.2d at 754–57. All of the methods require consideration of the incomes of both parties. Thus the income of Stephanie as well as that of Michael would have contributed to the children's court ordered support had there been a divided custody calculation, whereas under the agreement only Michael's income is contributed. Depending on the formula used and the amount of the parties' income, the amount to be paid by Stephanie for the support of children in Michael's custody plus the amount to be paid by Michael for the support of the children in Stephanie's custody could exceed the amount paid by Michael under the agreement.

The clause in the agreement that no modification "shall be valid unless in writing and signed by both parties" did not prevent the superior court from entertaining a motion to modify under Rule 90.3. The parties themselves invoked Rule 90.3 in their agreement, explained in terms satisfying that rule why the payments were based on income exceeding the rule's $60,000 cap, and obtained court approval of their agreement. Under these circumstances, the rule must take precedence over the terms of the parties' agreement.

We thus conclude that the agreement did not prevent Michael from invoking Rule 90.3(h)(1) to seek modification based on a claim of a material change of circumstances.[5]

■ We further conclude that the factors set forth in *Curley*, 588 P.2d at 291–92, appropriately determine whether there has been a material change of circumstances if, as here, the obligor parent initially agreed to pay child support in excess of the amounts minimally required by Rule 90.3. In *Curley*, we adopted a "balancing of the equities approach" in which "the movant [must] show by a preponderance of the evidence that there has been a material and substantial change in circumstances." 588 P.2d at 292 n. 9. We explained that "[t]he change ordinarily must be more or less permanent rather than temporary." *Id.* at 291.

In deciding whether to grant modification under AS 25.24.170, the court must consider:

> both the needs of the child or children supported as well as the needs and financial abilities of both parents.... [T]he trial court must examine the financial situation of both parents and determine whether the equities justify placing a greater burden on one and a correspondingly lesser burden on the other.

*Id.* at 292. We have consistently followed *Curley*. *See, e.g., Dewey v. Dewey*, 886 P.2d 623, 629 (Alaska 1994); *Arndt v. Arndt*, 777

---

5. We emphasize again that child support and property divisions are distinct issues that should be treated separately. We have stated that

> Division of marital property by the court is separate and distinct from questions of child support. Property divisions are final judgments which can be modified only under limit-

ed circumstances, whereas child support awards can be changed periodically under much more liberal standards. One should not be a tradeoff for the other.

*Arndt v. Arndt*, 777 P.2d 668, 670 (Alaska 1989) (citation omitted).

P.2d 668, 670 (Alaska 1989); *Patch,* 760 P.2d at 529.[6]

▮ In applying *Curley* to a claim that changed circumstances justify modifying support set by an arms-length agreement to an amount that continues to exceed the minimum set by the rule, the court must make efforts to respect the parties' contractual intentions and expectations. Thus, changes which the agreement anticipated should not be the basis for modification absent a showing of justification for relieving the parties of their bargained-for exchange. This practice will also encourage the parties to memorialize the circumstances that governed their agreement.

### C. The Applicability of the "Fifteen Percent Rule"

Michael also argues that he is entitled under the rule to a presumption of a material change of circumstances. "A material change of circumstances will be presumed if support as calculated under this rule is more than 15 percent greater or less than the outstanding support order." Alaska R. Civ. P. 90.3(h)(1).

▮ When Michael sought modification, two children continued to reside with Stephanie. Per the agreement, Michael's support obligation was therefore $1,800. Michael argues that his support obligation as calculated under Rule 90.3—applying the present $72,000 cap and taking into account the divided custody situation—is $726 per month.[7] He therefore argues that the resulting support obligation is more than 15% less than his existing obligation of $1,800. This, he concludes, proves a material change of circumstances, entitling him to modification.

We find this argument untenable. If an obligor initially agrees to pay an amount in excess of that minimally required under Rule

90.3 or if the court orders an additional award under Rule 90.3(c)(2), the "15% rule" does not apply. *Aga v. Aga,* 941 P.2d 1260, 1263 n. 6 (Alaska 1997). If the presumption were available in such a case, an obligor who agreed to pay child support more than 15% greater than the support required by Rule 90.3 could seek a modification immediately after signing the agreement. Likewise, the presumption would immediately arise in any case in which a court ordered additional payments under Rule 90.3(c)(2).

As we stated in *Bunn,* " '[t]he 15% rule' is a rule of *materiality,* not a definition of what constitutes a change of circumstances. There must be a change of circumstances, either factual or legal." *Bunn,* 934 P.2d at 758. We think that in context of an agreement like the Flannerys', the 15% rule can be used to demonstrate materiality, but the comparison cannot be between the amounts Michael agreed to pay and what the rule minimally requires. Instead, the amount Michael agreed to pay must be compared to the amount the agreement would require in light of the parties' contracting intentions and expectations. For example, in a case in which the only change in circumstances is a reduction in the obligor's adjusted income, and the parties based child support on the obligor's uncapped income, multiplying the obligor's uncapped changed income by the pertinent percentage yields the support the parties presumptively would have specified had that been the obligor's income when they entered into their agreement. If the support so calculated is more than 15% less than the agreed-upon support, materiality exists for purposes of seeking modification.

### D. Averaging Michael's Income

Michael sought modification in part because he claimed that his monthly adjusted income had decreased from over $10,000 in

---

**6.** Citing Rule 90.3(c)(1), Michael contends that Stephanie was required to prove "good cause" by "clear and convincing evidence that manifest injustice would result if the support award were not varied." Alaska R. Civ. P. 90.3(c)(1). The quoted requirement applies only to subparagraphs (A) and (B) of Rule 90.3(c)(1) and does not apply to the cap provision found in Rule 90.3(c)(2). *Farrell v. Farrell,* 819 P.2d 896, 902 (Alaska 1991) ("Subsection (c)(2) contains its

own standards and does not cross-reference (c)(1).").

**7.** He also proposes an alternative method of calculating support in a divided custody situation (the shared custody formula) that yields a support obligation of $475.25 per month to Stephanie for the two children in her custody.

1992 to less than $6,000 in 1995.[8] The court averaged Michael's income for the three-year period between 1992 and 1994 and concluded that because Michael's average adjusted income was $10,000 per month, his income had not declined as alleged.

Michael does not dispute the finding that his average monthly income was approximately $10,000 per month. He instead argues that the trial court erred in relying on the 1992–94 average, when the relevant period of "changed circumstances" began in January 1995. He contends that the superior court should have compared the $10,000 average with his substantially reduced 1995 income of $6,000 per month.

■ We agree with Michael's argument that because Rule 90.3(h)(2) provides that child support arrearages may not be modified retroactively, it was incumbent upon him to "promptly apply for a modification of child support when [the] material change in circumstances occur[red]." Alaska R. Civ. P. 90.3, Commentary X. He did just that, applying for modification in January 1995 when his income allegedly declined. The superior court erred in not considering January 1995 onward as the relevant period of "changed circumstances," instead of relying solely on the 1992–94 average.[9]

On remand, the trial court should consider Michael's adjusted income from January 1995 forward and should also determine whether any reduction in income is permanent or temporary. *See Curley*, 588 P.2d at 291

("The change ordinarily must be more or less permanent rather than temporary."); *see also Patch*, 760 P.2d at 530 ("[A] trial court should be reluctant to modify child support obligations when the obligor's loss of income appears only temporary."). The trial court may also consider Michael's future earning capacity. We have stated that a child support obligation "is related, but not limited, to the parent's present income." *Patch*, 760 P.2d at 529. As a general principle, the trial court should "consider the nature of the changes and the reasons for the changes, and then ... determine whether, under all the circumstances, a modification is warranted." *Pattee v. Pattee*, 744 P.2d 658, 662 (Alaska 1987) (citation omitted).[10]

### E. Divided Custody as a Material Change of Circumstances

■ Michael contends that the trial court erred in not considering as a material change of circumstances the fact that as of January 1995 he had primary physical custody of two of the four children. Michael also argues that the fact of divided custody entitles him to a recalculation of his child support obligation under the divided custody formula outlined in Rule 90.3, Commentary VI.B.3.

Stephanie argues that "[f]or there to be a 'substantial change of circumstance,' something must occur which was not contemplated by the parties at the time they had entered into their initial agreement." We agree.

---

8. Michael contends that because of the poor financial condition of his professional corporation, his salary as of January 1995 "had to be dropped to a financially responsible and sustainable level, which is $9,000 per month gross, $6,000 per month net."

9. Had the superior court been asked to calculate Michael's *initial* child support obligation under Rule 90.3, it could have appropriately considered his three-year income average for the purpose of estimating Michael's future income. However, none of the cases involving a "three-year average" for that purpose involved a motion to modify child support based upon an alleged change in circumstances. *See, e.g., Renfro v. Renfro*, 848 P.2d 830, 833 (Alaska 1993).

The superior court permissibly might have looked at financial information for past years to help determine whether the alleged decline be-

ginning in January 1995 was only temporary, unproven, or voluntary. It appears that is not what the court did, and it made no findings suggesting that it was rejecting the post–1994 evidence on those grounds. Just because an obligor is a private physician whose income "may vary from year to year" does not in itself permit the court to ignore evidence of an alleged income decline by looking exclusively at an average of past earnings history unless it finds that any current declines are only temporary.

10. We offer no opinion about whether Michael's income declined after 1994, as he alleges, or whether any reduction was unproven, temporary, or voluntary, as Stephanie argues. Additional evidence may be available upon remand to aid the superior court in deciding whether there was a change in circumstances that justifies a prospective (post–1995 motion) reduction of Michael's support obligation.

The parties here expressly contemplated possible changes in primary physical custody when they entered into their agreement, and they calibrated the child support provisions accordingly.

■ The Wyoming Supreme Court faced a similar issue in *Kidd v. Kidd*, 832 P.2d 566 (Wyo.1992), and found that the clear and unambiguous child support provisions of a comprehensive divorce settlement agreement could only be modified upon a showing by the obligor of a "substantial change in circumstances not anticipated at the time of the Agreement." *Id.* at 570.

For the same reason, the occurrence of the anticipated event of divided custody is not in itself a basis for recalculation using the divided custody formula suggested in the Rule 90.3 commentary.

### F. *Stephanie's Income*

Michael argues that the superior court erred in not considering Stephanie's improved financial situation as a material change of circumstances, allegedly entitling him to a reduction in his child support obligation and application of the Rule 90.3 guidelines. At the time of the modification hearing, Stephanie's adjusted annual income from her job as a nurse was $39,708. It appears that she had been employed in Michael's office prior to their divorce.

■ Stephanie's improved employment situation is not, standing alone, a per se material change of circumstances for purposes of Rule 90.3(h)(1), nor does it return Michael to the minimum requirements of the Rule 90.3 guidelines and excuse him from the terms of the support agreement. Nevertheless, on remand, the superior court should consider Stephanie's income. *Curley*, 588 P.2d at 292 (noting that the trial court must consider the financial situation of both parents).

### G. *The $72,000 Cap*

Rule 90.3(c)(2) permits child support to be calculated on income exceeding $72,000 if there is good cause. Michael argues that, in concluding that there was still good cause to deviate from Rule 90.3, Judge Gonzalez "simply parroted" Judge Andrews's 1992 finding. He also contends that Stephanie failed to satisfy Rule 90.3(c)(2), which places the burden on the nonobligor parent to "present evidence which justifies departure from [the] general rule" of the $72,000 cap. Alaska R. Civ. P. 90.3, Commentary VI.D.

■ Where, as here, the obligor parent initially agrees to waive the cap and later asks the court to apply the cap, the obligor has the burden of showing that the Rule 90.3(c)(2) factors, considered in light of the obligor's materially changed circumstances, now warrant application of the cap. This should generally be a difficult burden to meet, given our conclusion that a successful showing of a material change of circumstances for obligors in Michael's position does not entitle them to an automatic reentry into the Rule 90.3 subcap guidelines. Accordingly, Rule 90.3(c)(2) is not a "back door" through which Michael can return to the minimum requirements of Rule 90.3. Michael has submitted no evidence of circumstances that would justify reimposition of the Rule 90.3(c)(2) cap.

### H. *Calculation of Support on Remand*

Given the potential factual complexity of such disputes, we decline to attempt to prescribe a single formula for recalculating child support following a change of circumstances after the parties have negotiated a child support obligation in an amount exceeding the minimum required under Rule 90.3. We nonetheless conclude that such an obligor, after proving a material change of circumstances, is not entitled to an automatic reversion to the Rule 90.3 schedule. Michael agreed to waive the cap. As a result, he agreed to pay twice the minimum child support Rule 90.3 would have required, and agreed to a proportional reduction for each child who chose to live with him. Since this was the framework of the parties' negotiated agreement, any subsequent recalculation must take this as its starting point.

On remand, if Michael is found to have experienced a permanent material change of circumstances based on a decrease in income, one possible approach would be to reduce his

support payments pro rata; for example a 20% decrease in income would result in a 20% decrease in the agreed-upon support. This is just one suggested approach, however; we leave it to the discretion of the trial courts in this and other cases to explore other methods of recalculating support. In this case, for example, other possible changes, such as increases in Stephanie's income or earning capacity, or the need to provide support equitably for the children in the custody of both parents, may complicate a simple pro rata comparison.

## IV. *CONCLUSION*

In deciding whether Michael proved a change in circumstances, it was error to ignore evidence that Michael's income declined during the first six months of 1995 and to rely exclusively on an average of his income for three prior years. We REVERSE and REMAND for further proceedings consistent with this opinion.[11]

11. This result also requires that the award of costs and attorney's fees to Stephanie must be vacated.